# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| JOSIE RODRIGUEZ, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br>v.<br><br>NCB MANAGEMENT SERVICES, INC., and CAPITAL ONE BANK (USA), N.A.,<br><br>        Defendants. | Case No.: 18-cv-1783<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and Wisconsin Consumer Act, Ch. 421-427, Wis. Stats. ("WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3. Plaintiff Josie Rodriguez is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendants sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes, namely a personal credit card account.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt Defendants sought to collect from Plaintiff was incurred as a result of a consumer transaction.

6. Defendant NCB Management Services, Inc. ("NCB") is a foreign business corporation with its principal place of business located at One Allied Drive, Trevose, Pennsylvania 19053.

7. NCB does substantial business in Wisconsin and maintains a registered agent for service of process in Wisconsin at C T Corporation System 301 S. Bedford St. Suite 1, Madison, Wisconsin 53703.

8. NCB is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. NCB is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

10. NCB is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat § 427.103(3).

11. Defendant Capital One Bank (USA), N.A. ("Capital One") is a national bank with its primary place of business at 1680 Capital One Drive, McLean, Virginia 22102-3491.

12. Capital One is engaged in the business of collecting debts owed to itself and others that were incurred for personal, family or household purposes.

13. Capital One is a "merchant" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(25), in that it extended credit to Plaintiff.

14. The alleged debts that Capital One was attempting to collect from Plaintiff arose from alleged purchases on Plaintiff's personal credit card account.

15. Credit card accounts are "open-end credit plans," pursuant to Wis. Stat. § 421.301(27)(a). "Open-end credit plans" are, by definition, "consumer credit transactions." Wis. Stat. § 421.301(10) ("The term [consumer credit transaction] includes … transactions pursuant to open-end credit plans.")

16. With respect to Plaintiff's and the class members' alleged debts, Capital One is a debt collector engaging in debt collection, as defined in Wis. Stat. §§ 427.103(2) and (3) ("Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer. "Debt collector" means any person engaging, directly or indirectly, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms.).

**FACTS**

17. On or about January 29, 2018, Capital One mailed an account statement to Plaintiff regarding an alleged debt with an account number ending in 9699. A copy of this account statement is attached to this complaint as <u>Exhibit A</u>.

18. Upon information and belief, the alleged debt referenced in <u>Exhibit A</u> was incurred by use of a "Cabela's Club" store-branded credit card, used only for personal, family, or household purposes, including but not limited to purchases of household goods at Cabela's stores. http://www.cabelas.com/category/CLUB-Visa-Program/153277380.uts.

19. Capital One acquired Cabela's "in house" credit card issuing and servicing business in 2017. *See* https://www.wsj.com/articles/mastercard-lands-cabelas-credit-card-business-1517475720.

3

20. Upon information and belief, <u>Exhibit A</u> is a form account statement, generated by computer, and with the information specific to Plaintiff inserted by computer.

21. <u>Exhibit A</u> includes the following representations:

| Account Ending In 9699 | | |
|---|---|---|
| Previous Balance | = | $8,685.38 |
| Payments/Credits | − | $0.00 |
| Purchases/Cash Advances | + | $0.00 |
| Interest Charges/Fees | + | $108.05 |
| **New Balance** | | **$8,793.43** |
| Purchases This Year: | | $0.00 |
| Revolving Credit Limit: | | $12,600.00 |
| Available Credit: | | $0 |
| Days in Billing Cycle: | | 31 |
| Statement Date: | | 01/29/2018 |

| Cabela's CLUB Points | | |
|---|---|---|
| (Points shown in dollars) | | |
| Previous Points Balance | = | $0.00 |
| Points Earned at Cabela's | + | $0.00 |
| Points Earned at Cenex | + | $0.00 |
| Points Earned Elsewhere | + | $0.00 |
| Other Points Added | + | $0.00 |
| Points Redeemed | − | $0.00 |
| **CLUB Points Available** | | **$0.00** |

| Payment Information | |
|---|---|
| New Balance | $8,793.43 |
| Amount Past Due | $787.00 |
| **Minimum Payment Due** | **$983.00** |
| **Payment Due Date** | **02/23/2018** |

**Late Payment Warning:**
If your Minimum Payment Due is not received by the Payment Due Date, you may have to pay a late fee of up to $37.

22. <u>Exhibit A</u> states that, as of January 29, 2018, Plaintiff's account ending in 9699 had a "New Balance" of $8,793.43, with a "Payment Due Date" of February 23, 2018, and a "Minimum Payment Due" of $983.00.

23. On or about January 29, 2018, Capital One mailed Plaintiff a "Notice of Right to Cure Default" regarding same alleged "Cabela's Club" credit card with an account number ending in 9699. A copy of this notice is attached to this complaint as <u>Exhibit B</u>.

24. <u>Exhibit B</u> includes the following representation:

Due Date: February 23, 2018
Cure Amount: $983.00
Balance: $8,793.43

4

25. <u>Exhibit B</u> also includes the following text:

> We understand missing a payment happens, so we want to let you know you're late in making one or more of your payments for your Cabela's CLUB credit card account ending in 9699. This means you're in default. You can cure--or bring up to date--that default by making a payment of $983.00 by February 23, 2018. Your state or local government requires us to send you the information below:

26. Below such text, <u>Exhibit B</u> additionally includes the following text:

> **If you pay $983.00 by February 23, 2018,** you may continue with the contract.
>
> **If you don't pay by this date,** we may exercise our rights under the law.

27. In sum, <u>Exhibit B</u> states that Plaintiff's alleged "Cabela's Club" credit card account is in default, and that Plaintiff may cure such default by paying $983.00, the same amount listed as the "Minimum Payment Due" in Exhibit A, by February 23, 2018, the same date listed as the "Payment Due Date" in <u>Exhibit A</u>.

28. This "Notice of Right to Cure," <u>Exhibit B</u>, largely reflects the requirements provided by Wis. Stat. § 425.104.

29. In turn, Wis. Stat. § 425.105 provides:

> A merchant may not accelerate the maturity of a consumer credit transaction … unless the merchant believes the customer to be in default (s. 425.103) and then only upon the expiration of 15 days after a notice is given pursuant to s. 425.104 if the customer has the right to cure under this section.

30. As an unsecured, open-ended consumer credit transaction, Plaintiff's alleged debt would entitled her to a right to cure under Wis. Stat. § 425.105.

31. On or about February 8, 2018, approximately one week after Plaintiff would have received <u>Exhibit B</u> from Capitol One, NCB mailed Plaintiff a debt collection letter regarding the same alleged "Cabela's Club" credit card with an account number ending in 9699. A copy of this account statement is attached to this complaint as <u>Exhibit C</u>.

32. Upon information and belief, <u>Exhibit C</u> is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

5

33. Upon information and belief, <u>Exhibit C</u> is a form debt collection letter, generated by computer, and used by NCB to attempt to collect alleged debts.

34. <u>Exhibit C</u> includes the following representations:

```
Creditor: Capital One Bank (USA), NA
Acct#: XXXXXXXXXXXX9699
NCB File#:       8556
Balance: $8,793.43 as of 02-08-2018
```

35. Beyond listing the total balance of $8,793.43, <u>Exhibit C</u> lists neither $983.00, which is was amount actually due to Capital One at the time <u>Exhibit C</u> was sent to Plaintiff, nor any minimum payment due, nor any amount necessary to cure the default, nor any other amount whatsoever that NCB was seeking to collect from Plaintiff.

36. Additionally, the reverse side of <u>Exhibit C</u> lists options for "Electronic Payment Authorization" by mail or by phone.

37. Although <u>Exhibit C</u> states "YOU ARE NOT REQUIRED TO ARRANGE FOR ANY PAYMENTS OF THIS TYPE," both the options of payment authorization by phone and by mail provided for a series of electronic payments to be made "until your debt is paid in full."

38. There is a significance difference between the total balance of an alleged debt and the amount currently due to the creditor. *See Machnik v. RSI Enters.*, 2017 U.S. Dist. LEXIS 160772, at *6 (E.D. Wis. Sept. 29, 2017) ("In the context of a debt, 'owing' an amount is distinguishable from the amount 'due.'"); *see also Barnes v. Advanced Call Ctr. Techs., LLC*, 493 F.3d 838, 840 (7th Cir. 2007) ("Only the past due amount, the amount owed [to the debt collector], can be the 'amount of the debt' under § 809(a)(1).").

39. Upon information and belief, NCB and One Capital work in a scripted process to collect Capital One debts such as Plaintiff's alleged debt.

6

40. Upon information and belief, NCB is fully aware of the contents and representations in Exhibit A and Exhibit B and that Capital One sends such letters to consumers only a few days before NCB mails a letter in the form of Exhibit C.

41. Despite such knowledge, by including only the total balance of the alleged debt owed to Capital One, NCB effectively represents that the alleged debt had been accelerated and the full balance was due at the time the Exhibit C was mailed. That representation was false and misleading. By law, the alleged debt could not have been accelerated until weeks after Exhibit C was mailed. Wis. Stat. §§ 425.104, 425.105.

42. Exhibit C therefore misrepresents the amount of the debt that was due to the creditor at the time the letter was sent.

43. Plaintiff was misled and confused by Exhibit C.

44. The unsophisticated consumer would be misled and confused by Exhibit C.

### *The FDCPA*

45. The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

7

46. The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is an objective one—whether the plaintiffs or any class members were misled is not an element of a cause of action. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir. 1997). "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991).

47. Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973).

48. Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Baker,* 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.,* 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Riveria v. MAB Collections, Inc.,* 682 F. Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1450 (D. Nev. 1994); *In re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr. N.D.N.Y. 1982); *In re Littles,* 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), *aff'd as modified sub nom. Crossley v. Lieberman,* 90 B.R. 682 (E.D. Pa. 1988), *aff'd*, 868 F.2d 566 (3d Cir. 1989).

8

49. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'"); *quoting Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11

9

(11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

50. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

51. 15 U.S.C. § 1692e prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

52. 15 U.S.C. § 1692e(2)(A) specifically prohibits: "The false representation of — the character, amount, or legal status of any debt."

53. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

54. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

55. 15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

### *The WCA*

56. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

57. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

58. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

59. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

60. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

61.     The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

62.     Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

63.     Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15 (Wis. 2010). In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

64.     Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

65.     Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

66.     Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

12

## COUNT I - FDCPA

67. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

68. Count I is brought against Defendant NCB.

69. At the time Plaintiff had received Exhibit C, the maturity of Plaintiff's alleged debt had not yet been accelerated.

70. At the time Plaintiff had received Exhibit C, the maturity of Plaintiff's alleged debt could not have been accelerated as a matter of Wisconsin law. Wis. Stat. §§ 425.104, 425.105.

71. By listing only the total balance of Plaintiff's alleged debt, Exhibit C misrepresented the amount due to Capital One at the time the letter was sent.

72. NCB therefore misrepresented the amount, character, and legal status of the debt it was collecting.

73. NCB's attempt to collect the entire balance of Plaintiff's alleged debt was based upon false, misleading, and confusing representations, and was also an unfair and unconscionable means of collecting a debt.

74. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692(f), 1692f(1), and 1692g(a)(1).

## COUNT II - WCA

75. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

76. Count II is brought against both defendants.

77. At the time Plaintiff had received Exhibit C, Plaintiff's alleged debt had not yet been accelerated.

78. By listing only the total balance of Plaintiff's alleged debt, Exhibit C misrepresented the amount due to Capital One at the time the letter was sent.

79. Exhibit C thus claims a right with knowledge that the right does not exist.

80. By attempting collect the entire balance of the alleged debt while Capital One was still seeking to collect only the minimum payment due, Exhibit C could reasonably be expected to harass Plaintiff.

81. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), and 427.104(1)(j).

## CLASS ALLEGATIONS

82. Plaintiff brings this action on behalf of two prospective Classes.

83. Class I ("Nationwide Class") consists of (a) all natural persons in the United States of America (b) who were sent a collection letter by NCB in the form of Exhibit C to the complaint in this action, (c) for an alleged debt incurred for personal, family or household purposes, (d) prior to the acceleration of the alleged debt, (e) where the letter in the form of Exhibit B was mailed between November 8, 2017 and November 8, 2018, inclusive, (f) and was not returned by the postal service.

84. Class II ("Wisconsin Class") consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter by NCB in the form of Exhibit C to the complaint in this action, (c) for an alleged debt incurred for personal, family or household purposes, (d) prior to the acceleration of the alleged debt, (e) where the letter in the form of Exhibit B was mailed between November 8, 2017 and November 8, 2018, inclusive, (f) and was not returned by the postal service.

85. Each Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each Class.

86. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibits A-C violate the FDCPA and/or the WCA.

87. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

88. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

89. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

90. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: November 9, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com